IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN MICHAEL KIRK,

    Petitioner,                       No. CIV S-07-2521 GEB GGH P

    vs.

TOM FELKER, et al.,

    Respondents.                  ORDER and

_____/    FINDINGS & RECOMMENDATIONS

Introduction

        An evidentiary hearing was held on December 1, 2009, in this matter to determine whether petitioner is entitled to equitable tolling because his appellate counsel failed to inform him of the denial of his July 26, 2006, petition for review until late October of 2007.[1] Assistant Federal Defender Ann McClintock represented petitioner; Deputy Attorney General Paul Bernardino represented the respondent.

Background

        This court had previously determined, in adjudicating respondent's motion to dismiss, that the petition was untimely by more than three weeks (24 days) under the AEDPA

---

[1] See Order, filed on January 13, 2009 (docket # 21), p. 4.

1

statute, but that an evidentiary hearing would have to be held in order to determine whether equitable tolling should apply to render the petition timely. See Order, filed on January 13, 2009 (docket # 21). The motion was denied explicitly without prejudice to the ultimate resolution following the evidentiary hearing, which was continued twice from the original date of June 15, 2009, once pursuant to a stipulation of the parties through their counsel and again due to a conflict with the prison's schedule. Petitioner's conviction offense, the length of his sentence, the grounds of his petition and the analysis of the statutory untimeliness of the petition has been fully set forth in the January 13, 2009, Order (docket # 21), and is incorporated by reference herein.

Evidentiary Hearing

At the hearing, the undersigned observed that petitioner's testimony (via video-conferencing) regarding his efforts to keep up with the progress of his appeal appeared to be sincere as well as diligent. Petitioner testified consistently that he knew that his appeal claims had to go through two levels of courts, beginning with the state appellate court, before he could proceed upon a federal habeas corpus petition, although he also repeatedly stated that he did not know the name of the highest state court through which his direct appeal had to process, the state Supreme Court. In the February 15, 2005, introduction letter that his appointed appellate counsel, Rita Swenor, sent to petitioner, outlining the scope of her duties, there was no mention regarding the filing of state or habeas petitions. Petitioner's Exhibit (Exh.) 4. Ms. Swenor wrote that she would both mail him copies of briefs as the case progressed, as well as a copy of the court's decision (unless petitioner indicated that he would prefer to have these documents sent to someone else). Id., at 2. Petitioner testified that he never met Ms. Swenor in person (her first letter states that she would not be making an in-person visit unless warranted by unusual circumstances in his case). Id., at 1. Ms. Swenor does state in the letter that she will keep him "advised of all major events in the case as they occur" and she invites him to write to him with questions or comments about his case and she would "always try to respond promptly." Id., at 2.

1  She also states that she writes to her clients "whenever there has been a significant development
2  in the case" and when she files a brief, that "major events in the case often are separated by a
3  period of months," that at the completion of the appeal she would return the transcripts to him or
4  as otherwise directed. Id., at 1-2

5  Petitioner testified that he heard nothing about the outcome of his appeal to the
6  state appellate court prior to his current counsel's showing him in 2008 the May, 2006, opinion
7  (contained at pp. 69-77 of petitioner's Exh. 1). Petitioner acknowledged that he did receive the
8  March 9, 2005, letter from Ms. Swenor (requesting, inter alia, that he sign an authorization for
9  her to obtain certain information). Petitioner's Exh. 5. Petitioner also recalled the copies of Ms.
10  Swenor's requests for extension of time to the Third Appellate District Court of Appeal, dated
11  April 23, 2005; May 24, 2005; and June 23, 2005, respectively, and indicated that he knew that
12  there was no opening brief filed as of June, 2005. Petitioner's Exhs. 6, 7, 8. Petitioner
13  acknowledged receiving the July 25, 2005, letter which contained a copy of the opening brief.
14  Petitioner's Exh. 9. In the letter, petitioner is told the time lines for the filing of the responsive
15  brief and any reply. Id. Petitioner testified that the opening brief contained in pages 80 through
16  110 of petitioner's Exh. 1 looked familiar. Petitioner also recalled the brief December 6, 2005,
17  letter from Ms. Swenor, enclosing both the respondent's brief (and also stating the reply brief
18  was enclosed). Petitioner's Exh. 10. Petitioner testified that from this point he heard nothing
19  more from Ms. Swenor (until much later, see below).

20  Petitioner recognized respondent's Exh. B-2, as petitioner's first letter to the
21  Court of Appeal, dated as received on August 10, 2006, following his apparent receipt from that
22  court of a letter saying that there had been a remittitur to the trial court clerk with a certified
23  opinion attached.[2] Petitioner asked therein for an explanation of "this paper work" and noted that
24  no opinion had been attached. Petitioner confirmed that his Exh. 11 was the clerk's August 10,

---

[2] The Pleasant Valley State Prison mail log indicates this initial communication from the state appellate court was received on August 4, 2006. Respondent's Exh. C-1, p. 2.

3

2006, response to this inquiry. In the letter, it is explained that the case was remitted back to the trial court's jurisdiction, that the appeal was final in the appellate court and that no copy of opinion was supposed to be attached to his copy of the remittitur notification. Petitioner recalled respondent's Exh. B-4 as his second follow-up letter to the appellate court clerk, dated received as of August 24, 2006. Petitioner recognized his Exh. 12, as the clerk's response in a letter dated August 24, 2006.

Petitioner testified to having written to Ms. Swenor three to five times after his last communication from her in the letter dated December 6, 2005, prior to having received notice of the remittitur from the state appellate court. The mail log bears this out. The log indicates that petitioner mailed letters to Ms. Swenor on January 3, 2006, April 3, 2006 and June 28, 2006. Respondent's Exh. C, p. 1. The mail log also shows that he sent mail to Ms. Swenor simultaneous with sending the above-described inquiries to the state appellate court following his receipt of a copy of the remittitur notice, on August 7, 2006, as well as August 21, 2006. (Although petitioner could not precisely recall whether his letters to her at that time were duplicates of the ones he sent to the state appellate court clerk, he agreed with respondent's counsel that it was reasonable to conclude that they were). Petitioner also recalled trying to call Ms. Swenor in 2006, around the time of the remittitur. Petitioner also testified that he continued to write to his appellate counsel for information about what had happened on appeal and to get a copy of the opinion. The prison mail log at Pleasant Valley State Prison (PVSP) shows that, in addition, to the attempted communications noted above, petitioner also wrote to Ms. Swenor on January 23, 2007, on February 26, 2007, and on March 8, 2007. Respondent's Exh. C, p. 2. The PVSP mail log verifies that petitioner sent a letter to the Central California Appellate Project (CCAP) on March 14, 2007, and the letter itself, dated March 12, 2007, is an inquiry to CCAP about what is going on with his case. Respondent's Exh. C, p. 2; petitioner's Exh. 15, pp. 3, 5. In the letter, petitioner explains that he has written about four to six letters to Ms. Swenor, but that he has received no response; he states that he is sure a decision has been made in his case,

but that he would like to read the decision so that he could know what to do next. Petitioner's Exh. 15, p. 3. He asks for help to determine into which court he needs to file next and what forms to use and seeks to move on his case as soon as possible, and again expresses his concern as to why Ms. Swenor has failed to respond to his letters. Id. Petitioner testified that he was transferred from PVSP to High Desert State Prison (HDSP) in April of 2007. Despite his efforts, petitioner testified that he did not receive any communication from his appeals lawyer, Ms. Swenor, until October or November of 2007. The HDSP incoming mail log verifies mail from Ms. Swenor was received at the prison on October 29, 2007. Respondent's Exh. C-3. Petitioner recalled the letter from Ms. Swenor, dated October 19, 2007, as his first communication from her since December of 2005. Petitioner's Exh. 13. Within that letter, Ms. Swenor included a draft of a federal habeas petition, petitioner verified as his Exh. 14 and within her letter, she directs petitioner to get the petition in the mail by October 24, 2007. As pointed out, however, this would have been a physical impossibility because, as noted above, the HDSP prison log records the communication from Ms. Swenor as not received until October 29, 2007. Petitioner recognized the petition as the one he signed and dated on November 17, 2007. He explained that, in addition, to the deadline she set forth having already passed by the time he received it from Ms. Swenor, he was in administrative segregation at the time he received it and that it was difficult to get to the library for a copy so that he could have a record of it before sending it out. In addition, when his counsel also asked if it took some time to prepare an in forma pauperis application to accompany the petition, he agreed that it had.

        For Ms. Swenor's part, she testified that it was her practice to notify any client in a final letter, once the California Supreme Court has denied the petition for review, telling him when the AEDPA statute of limitations would expire. Ms. Swenor testified that she had had two computer crashes, apparently within the relevant period, but was unable to definitively determine how petitioner fell through the cracks. However, it was only, she thinks, when she was in the process of shredding old files that she discovered that she had the original appellate denial

opinion as well as the transcripts that she would have sent at the time of the usual final letter and no record of having sent it to him, which makes her believe that she never sent him such a letter. Upon the realization of that omission, she apparently panicked (nearly had a "heart attack," in her words) and in an effort to mitigate the prejudice to petitioner, drafted the federal habeas petition (which she had not filled out before in thirty years of practice) and forwarded the packet by Federal Express to her client, petitioner herein, at the prison.

In his cross-examination of petitioner, respondent's counsel pointed out that the exhaustion petition filed in the state supreme court by Ms. Swenor, which indicates service on June 20, 2006, also lists in the proof of service that petitioner was among those served. Respondent's Exh. A. Petitioner did not appear to definitively recall having been served, and the court's subsequent review of the relevant mail log produced by respondent does not indicate a mailing from Ms. Swenor received on or around that date.[3] Respondent's Exh. C-1. In her testimony, Ms. Swenor stated that she believed she had sent it, but had no way to know if petitioner had ever received it. Petitioner testified that whether or not he received it, he still would not have known what the outcome was of his appeal or when it occurred.

Respondent's counsel focused on the substance of the response to petitioner's inquiry (see respondent's Exh. B-4) by the state appellate court clerk on August 24, 2006. Respondent's Exh. B-5; petitioner's Exh. 12. The response stated, in relevant part, the following:

> 1. This court filed its decision in your case on May 11, 2006, affirming the judgment of the trial court.
> 2. On July 26, 2006 the Supreme Court of the State of California denied your petition for its review of your case.
> 3. On July 31, 2006, this court advised the trial court (by issuing a document called a remittitur) that this matter is final in both the Court of Appeal and the Supreme Court of California.

---

[3] There is an indistinct entry on page 1 of respondent's Exh. C-1 (PVSP incoming mail log), which individually looks like it could be "6/28/06" rather than "05"; however, this interpretation would make no sense as the entries on the prison mail logs are consistently chronological and this entry comes between one entered on "5/27/05" and one on "7/28/05."

> Based on the above information, there will be no further action in this court regarding appellate case No. CO48231. Any questions regarding your legal rights and remedies must be directed to an attorney.

Id.

Petitioner's testimony regarding the information imparted therein was essentially that he did not understand that it meant that he had been through the two requisite state court levels that he needed to exhaust through before going to the federal court. He simply did not understand that the state Supreme Court was the final level that he had to obtain a decision from, which is why he sought the decisions. On direct, petitioner had testified that the first time he had seen the appellate court opinion was when petitioner's counsel herein showed it to him. Petitioner's Exh. 1, pp. 66-79. On cross, respondent's counsel highlighted the eight-month gap between his last letter to Ms. Swenor (or to CCAP) and the filing of the instant petition. Petitioner conceded that he gave up after his multiple (apparently fruitless) attempts to communicate with Ms. Swenor. On re-direct, petitioner testified Ms. Swenor had not told him about the petition for writ of certiorari process, that he did not know when the statute of limitations would run under AEDPA, and that his first hint of deadline came in the packet which contained her draft of a federal petition. On re-cross examination, petitioner conceded that he relied wholly on his lawyer to explain the status of his case and what he needed to do next and that he did no research on his own with regard to such matters.

Discussion

As the undersigned has previously stated, a habeas petitioner bears the burden of proving that equitable tolling should apply to avoid dismissal of an untimely petition. Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002). The one year statute of limitations for filing a habeas petition may be equitably tolled "only if *extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time." Id., at 1066 (internal quotation omitted [emphasis added in Miranda]). The prisoner must show that the "extraordinary circumstances" were the cause of his untimeliness. Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003).

7

"'When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate.'" Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).[4]

The court has also previously stated that, under Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001), petitioner is not entitled to equitable tolling due to any miscalculation of the AEDPA limitations period by petitioner's counsel or "negligence in general," as such errors do not constitute the requisite "extraordinary circumstances."  See also, Miranda, supra, at 1066-1067.  In Miranda, the Ninth Circuit emphasized that while a petitioner is constitutionally entitled to counsel on direct review, there is no such constitutional guarantee with respect to counsel in state post-conviction proceedings. 292 F.3d at 1068.  Nor is there a constitutional right to counsel when proceeding with a federal habeas.  Bonin v. Vasquez, 999 F.2d 425, 429 (9th Cir. 1993).[5]

The court also previously noted that under Spitsyn v. Moore, 345 F.3d 796, 800 (9th Cir. 2003), however, an attorney's misconduct, where sufficiently egregious, may constitute the required extraordinary circumstances.[6]  Therefore, this hearing was held to determine whether petitioner could meet his burden to show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336, 127 S. Ct. 1079, 1085 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005)).  By the hearing, the court has sought to evaluate whether or not appellate counsel's alleged oversight was egregious enough or petitioner's conduct sufficiently diligent to warrant equitable tolling.

---

[4] See, Order, filed on January 13, 2009 (docket # 21), pp. 3-4.

[5] See, Order, filed on January 13, 2009 (docket # 21), pp. 4-5.

[6] See, Order, filed on January 13, 2009 (docket # 21), p. 5.

Rodriguez v. Marshall, 234 Fed. Appx. 746, 747-748 (9th Cir. 2007).[7]

      Following the testimony at the evidentiary hearing, the undersigned found that petitioner met the first prong for equitable tolling in that petitioner was credible, had been diligent (as supported, i.e., by such records as the prison mail logs), and that he suffered from an honest confusion. This court perceived that petitioner's remaining hurdle, the second prong of the requisite exceptional or extraordinary circumstance, was more problematic for petitioner. While petitioner in good faith may not have understood the state court of appeals letter explaining the status of the appeal, the question is whether counsel's (and CCAP's) failure to respond reach the level of an extraordinary circumstance. The court noted the irony that petitioner's very diligence may have hurt him in this instance as it is more likely than not that his appellate counsel's corroboration of her failure to timely keep him informed of the decisions in his case, against her normal practice, of itself could have warranted equitable tolling. However, that he simply did not understand the communication from the state appellate court clerk, which information was the fruit of his own diligence, could be characterized as ignorance of the law, which has been found not to qualify for equitable tolling. Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("pro se petitioner's lack of legal expertise is not, by itself, an extraordinary circumstance warranting equitable tolling"); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did not toll statute); Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1273 (D.Haw. 1999) (lack of legal expertise does not qualify prisoner for equitable tolling); Henderson v. Johnson, 1 F.Supp.2d 650, 656 (N.D. Tex. 1998) (same). On the other hand, the Ninth Circuit has expressly agreed with its sister circuits that "a prisoner's lack of knowledge that state courts have reached a final resolution of his case can provide grounds for equitable

---

[7] See, Order, filed on January 13, 2009 (docket # 21), p. 5, also noting at footnote 3 that the Ninth Circuit now permits citation to unpublished cases. Ninth Circuit Rule 36-3, in accordance with Fed. R. App. P. 32.1, now permits citation to unpublished dispositions and orders issued on or after January 1, 2007. However, such rulings "are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." Ninth Circuit Rule 36-3(a).

1 tolling if prisoner has acted diligently in the matter." Ramirez v. Yates, 571 F.3d 993, 997 (9th
2 Cir. 2009) [internal quotation and citations omitted].  Determining whether equitable tolling
3 applies is a "fact-specific" inquiry.  Frye v. Hickman, supra, 273 F.3d at 1146.  After the hearing
4 the court directed the parties to provide any cases on point specifically with reference to the
5 second prong, particular regarding cases when a lawyer has not informed a client of the existence
6 of a final decision.

Supplemental Cases

The court has reviewed the cases submitted by counsel for both parties. Respondent cites, inter alia, Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003) for the principle that "routine instances of attorney negligence do not constitute an 'extraordinary circumstance' that requires equitable tolling").  However, the Ninth Circuit found in that case that petitioner's attorney's negligence in combination with misconduct by prison officials *did* cause petitioner's late filing, warranting equitable tolling.  Id.  Although in this instance, no misconduct by a prison official is at issue, it does appear that what occurred here could be characterized as something beyond negligence and could rise to conduct sufficiently egregious to warrant equitably tolling for the slightly more than three-week period for which petitioner seeks equitable tolling.  Petitioner in this case was assured by his appellate counsel that he would be informed of significant developments in his case, and her own testimony confirmed that it was her practice to make sure that happened.  For whatever reason, both petitioner and Ms. Swenor agree, and the mail log records produced all converge to support the finding that his counsel did not inform him at the appropriate time of when rulings were made on his direct appeal and petition for review.  There is a dearth of evidence to show that he ever received the petition for review despite the attached proof of service.  Further, Ms. Swenor never responded to numerous letters sent by petitioner.  Her eleventh hour effort to rescue petitioner from an untimely federal habeas filing was too little too late.  As the undersigned noted at the conclusion of the hearing, petitioner's confusion centered on never having been certain of the outcome of his appeal and

never being sure it had even progressed to the final state court level, or in any event, that a decision had been reached at the second level, this despite the fact that the state appellate court clerk plainly indicated that his petition for review had been denied.  Respondent also cites Culver v. Dir, of Corr., 450 F. Supp.2d 1135, 1142 (C.D. Cal. 2006), finding that petitioner's claim that his appellate counsel failed to file a petition for review on direct appeal and failed to advise him of the AEDPA deadline did not warrant equitable tolling because petitioner had no statutory right to counsel with respect to his habeas petition.  But Culver, supra, involved a petitioner who engaged in lengthy delays between the filings of his state habeas petitions and whom the court found, even if his appellate attorney had been guilty of egregious misconduct, that petitioner therein, unlike the instant petitioner, did not establish his personal diligence in contacting his attorney to determine whether a petition for review had been filed.  Respondent cites Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990 (1987), for the incontrovertible proposition that prisoners do not have a constitutional right to counsel for discretionary appeals on direct review, i.e., no right to counsel beyond the first appeal as of right, and Thomas v. Small, 2009 WL 2898815 *4-5 (C.D. Cal. 2009), which is a case where petitioner's federal habeas petition was over four and a half years late when it was filed.  Respondent cites it in support of the finding that petitioner's "alleged ignorance of the law, lack of legal sophistication, lack of legal assistance or resources" did not warrant equitable tolling.  Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013 n. 4 (9th Cir. 2009) (Ninth Circuit noting that it has held, citing Raspberry, supra, "a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling.")   The court also noted, however, the district court's "significant skepticism" about Waldron-Ramsey's claimed ignorance of the law in light of his being "a seasoned litigant" with 21 lawsuits filed in that district alone.  Respondent also notes Cousin v. Lensing, 310 F.3d 843, 848-849 (5th Cir. 2002), where there was no equitable tolling where the attorney waited two years to investigate the status of the petition.  Respondent also

\\\\\

1  cites Williams v. Sheperd, 2005 WL 1837133 *3 (E.D. Cal. 2005),[8] where the court did not find
2  an extraordinary circumstance when petitioner alleged that his trial attorney did not file an appeal
3  in his case and states that he wrote him five times within two months of his sentencing, but took
4  no further action for a year and a half or because he did not have the entire trial record when
5  petitioner knew the factual basis of his claims.  However, in that case the court found that
6  petitioner had failed to act diligently.  Id.  Respondent relies on a case which the court cannot
7  locate, Henson v. Almager, 2009 WL 1906067 (C,D, Cal. 2009), for the finding that there is not
8  right to counsel in seeking discretionary review, as with a petition for review to the California
9  Supreme Court.  However, this misses the point that petitioner has no discretion not the exhaust
10 his state court remedies except in the unlikely instance of respondent's waiver of exhaustion, a
11 circumstance upon which it would be very risky to rely.[9]

12        Petitioner's litany of supplemental cases includes, inter alia, a reference to
13 Spitsyn, supra, 345 F.3d at 800, and Baldayaque v. U.S., 338 F.3d 145, 151-153 (2nd Cir. 2003).
14 In Baldayaque, a case wherein counsel failed to file a § 2255 petition when specifically instructed
15 to do so, it was recognized that although negligent attorney errors, such as a miscalculation of a
16 filing deadline, are not entitled to equitable tolling, conduct may be "so outrageous or so
17 incompetent as to render it extraordinary," constituting a violation of "a basic duty of an attorney
18 to his client," warranting equitable tolling.  Petitioner points to Nara v. Frank, 2004 WL 825858
19 *11 (W.D. Pa. 2004), where equitable tolling was granted for a diligent petitioner who was
20 affirmatively misled by his attorney into believing she would represent him through post
21 conviction proceedings and prevented petitioner from moving forward by, among other things,
22 failing to inform him of the specific date that the Pennsylvania Supreme Court had denied review

---

[8] These findings and recommendations were adopted by the district judge in that case.

[9] A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986).

of a motion to withdraw his guilty plea, failing to tell him she had not filed a reconsideration motion as requested, leading him to believe she would file a federal habeas petition or his behalf, and telling him there were no time limitations for filing a federal petition.  In another case petitioner cites, Cartagena v. Corcoran, 2008 WL 530064 * 4-5 (E.D.N.Y. 2008), the court relied on Baldayaque, supra, finding that it paralleled the circumstances therein where counsel was retained for the express purpose of filing a habeas petition but failed to do so, also failing to keep petitioner "reasonably informed about the status of [his case]" or "to explain the circumstances 'to the extent necessary to permit [him] to make informed decisions regarding the representation."

In this instance, the undersigned finds that Ms. Swenor, while she did brief the direct appeal and kept petitioner apprised of the briefing up to the point of the intermediate appellate court, essentially thereafter abandoned him.  In the seminal case, Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288-89 (9th Cir. 1997), overruled on other grounds by Calderon v. U.S. District Court (Kelly), 163 F.3d 530 (9th Cir. 1998), itself abrogated on other grounds by Woodford v. Garceau, 538 U.S. 202, 123 S. Ct. 1398 (2003), wherein the Ninth Circuit found that the AEDPA statute of limitations could be equitably tolled if extraordinary circumstances beyond a prisoner's control made it impossible to file the petition on time, petitioner's lead counsel had diligently prepared Beeler's petition, but withdrew to accept a job in another state, leaving work product much of which was not usable by substitute counsel.  In that case, the court found that petitioner had no control over those events.  While not precisely parallel to the instant petition, petitioner was unable to move forward because his appellate counsel, which she freely admitted, although apparently inadvertently, failed altogether to keep him apprised of the outcome of his direct appeal as she had represented that she would, despite his repeated efforts to contact her.[10]

---

[10] Respondent states in his supplemental list of cases that this court "issued a tentative ruling against equitable tolling" at the conclusion of the evidentiary hearing.  The undersigned

13

1    Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to
2 dismiss the petition as untimely, filed on April 25, 2008 (docket # 12), be denied.
3    These findings and recommendations are submitted to the United States District
4 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
5 days after being served with these findings and recommendations, any party may file written
6 objections with the court and serve a copy on all parties.  Such a document should be captioned
7 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
8 shall be served and filed within seven days after service of the objections.  The parties are
9 advised that failure to file objections within the specified time may waive the right to appeal the
10 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
11 DATED: 05/12/10

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
kirk2521.pst

---

did state that in giving his "tentative impressions," that petitioner had certainly met the diligence first prong, but the question remained whether, in light of the appellate court clerk's responsive letter explaining that the appeal process was complete, how the second exceptional [extraordinary] circumstance prong could be met.  The court has now concluded that, in these circumstances, petitioner should be granted equitable tolling for the limited period at issue.