IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN MICHAEL KIRK,

    Petitioner,                              No. CIV S-07-2521 GEB GGH P

    vs.

TOM FELKER, et al.,

    Respondents.                        FINDINGS AND RECOMMENDATIONS

    _____/

*Introduction and Summary*

        As is sometimes the case in federal habeas practice, the procedural battles which occur during litigation are often more lengthy/complex than adjudicating the substantive merits of the petition. This is such a case. Having moved past the statute of limitations issues to the merits, the undersigned moves to determining the two related claims in the petition: (1) the prosecution violated the Brady[1] rule concerning disclosure of potentially exculpatory/impeaching information when it tardily disclosed bogus bills of sale associated with the truck stolen by petitioner; (2) defense counsel was ineffective for arguing only for dismissal of the case as a

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). In this Findings and Recommendations, Brady violations stand for both an assertion that exculpatory information was withheld by the prosecution from disclosure, as well as an assertion that material impeaching material was withheld.

1

sanction for the Brady violation, instead of including a request for exclusion of the late-disclosed material.  For the reasons set forth herein, there was no Brady violation; even if one considers the prosecution's actions to be a violation of the Brady rule, no prejudice occurred because of such a violation; no ineffective assistance of counsel took place in that exclusion of the evidence would have surely been potentially detrimental to the *defense*.

*Background*

None of the basic facts of the case are in dispute, although, of course, petitioner believes the result should have been opposite of what it was.  Therefore, the facts set forth by the state Court of Appeal are adopted as the background facts.

> A police officer responding to a complaint of a truck blocking an alleyway at 3:00 a.m. on the morning of July 3, 2004, saw defendant standing about 10 to 15 feet from the truck. Defendant asked the officer what was wrong. When the officer told him of the complaint, defendant responded, "I'll be more than happy to move it for you guys." The officer noticed the rear license plate was defaced, the front one was missing, and the vehicle had been hot wired and was reported stolen. On June 29, 2004, it had been reported missing from a gated worksite in West Sacramento. The officer arrested defendant. When the officer tried to start the truck by hot wiring it an hour later, it would not start. Defendant was charged with unlawful taking or driving of a vehicle, possession of a stolen vehicle, and five prior prison terms.
>
> TRIAL
> Testimony at trial showed defendant had been at the gated worksite some time before the truck was taken. The general foreman of the company testified he saw defendant standing next to a dumpster within the fenced work yard some eight months prior to the theft. The foreman chased defendant, who climbed through a hole in a perimeter chain link fence. Defendant took a swing at the foreman and escaped on a bike, but not before the foreman saw that defendant had in his possession a distinctive keychain belonging to one of the company employees. Also, a West Sacramento police officer testified that he saw defendant inside the fenced area on company property about nine months before the date of the theft. The officer saw a bike resting next to a hole in the fence, and upon questioning, defendant admitted the bike belonged to him.
>
> The foreman of the company, who owned the truck, testified that he recovered two handwritten notes of sale from the glove compartment of the stolen truck in July, after it was recovered. Each note purported to pass title to defendant from Mark Nelson in exchange for $1,200. One note was dated June 28, 2003, and the other, June 28, 2004. The foreman boxed up the notes of sale because the company was moving, and he did not inform the prosecutor of their existence until a week or so before the trial began in October 2004. He delivered the notes of sale to the prosecutor one week later. The prosecutor notified defense counsel

> of the notes of sale as soon as he heard of them, but did not give defense counsel copies until the day of trial. Defense counsel immediately moved to dismiss the action. The court denied the motion, finding that the prosecutor had produced the notes in a timely manner.
>
> During opening argument, the prosecutor argued the notes of sale were fabricated by defendant to explain why he had possession of the truck. The defense theory was that they were fabricated-not by defendant but by the property owner-to implicate the defendant. Defense counsel pointed out that the police had thoroughly inspected the truck and had not found the notes of sale; the foreman had waited several months before notifying the prosecutor of this important evidence (at a time defendant was in jail); and no handwriting evidence was offered to show that defendant authored the notes of sale.
>
> While deliberating, the jury requested a readback of the testimony concerning when the foreman turned the notes of sale over to the prosecutor. One hour later, the jury returned a guilty verdict on the count alleging possession of the stolen truck. The jury deadlocked on the unlawful taking or driving charge. In a bifurcated bench trial, the court found true that defendant had served five prior prison terms. The court sentenced defendant to a nine-year aggregate prison term.

People v. Kirk, 2006 WL 1283922 *1-2 (Cal. App. 2006).

*Legal Standards Applicable to the Issues*

Without indenting and inserting different quotation punctuation, and with bracketed material added, the undersigned quotes from the pertinent case, Cheny v. Washington, 614 F.3d 987, 993-995 (9th Cir. 2010):

Under § 2254(d)(1), a federal court must deny habeas relief with respect to any claim adjudicated on the merits in a state court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

[Petitioner] does not argue that the relevant state court decision was "contrary to" any clearly established Supreme Court holding. FN3 Rather, [petitioner's] argument centers on

the "unreasonable application" clause of § 2254(d)(1). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Indeed, the Supreme Court has repeatedly instructed that "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, --- U.S. ----, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted); e.g., Waddington v. Sarausad, --- U.S. ----, 129 S.Ct. 823, 831, 172 L.Ed.2d 532 (2009); Middleton v. McNeil, 541 U.S. 433, 436, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam); Rice v. Collins, 546 U.S. 333, 341-42, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006). Rather, for the federal court to issue the writ, the state court's application of Supreme Court precedent must be "objectively unreasonable." Renico, 130 S.Ct. at 1862 (internal quotation marks omitted). This is a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Id. (internal quotation marks and citations omitted).

> FN3. This claim, had it been raised, would have failed. A state court's decision is "contrary to" clearly established Supreme Court holdings only if it "applies a rule that contradicts the governing law set forth" in Supreme Court cases, Williams, 529 U.S. at 405, 120 S.Ct. 1495, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [that Supreme Court] precedent," id. at 406, 120 S.Ct. 1495. In this case, the state court correctly identified Strickland as the controlling legal standard, and there is no Supreme Court decision considering facts that are "materially indistinguishable" from those of this case.

When a habeas petitioner asks a federal court to review a state court's application of the Strickland standard under § 2254(d)(1), we must give state courts "even more latitude [than is typical under AEDPA] to reasonably determine that a defendant has not satisfied" the Strickland standard. Knowles, 129 S.Ct. at 1420. This heightened deference stems from the nature of Strickland's two-prong standard for evaluating ineffective assistance of counsel claims. Id.; see Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam).

Under Strickland's first prong, a defendant must prove that counsel's performance

4

was "deficient." Knowles, 129 S.Ct. at 1419. Counsel's performance will be held constitutionally deficient only if the defendant proves that it "fell below an objective standard of reasonableness," as measured by "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. In reviewing counsel's performance for deficiency, courts "must be highly deferential" and avoid the temptation to "conclude that a particular act or omission of counsel was unreasonable" simply because in hindsight the defense has proven to be unsuccessful. Id. at 689, 104 S.Ct. 2052. Courts are required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The defendant bears the burden of overcoming the strong presumption that counsel performed adequately. Id.

Even if the defendant succeeds in showing that counsel's performance was deficient, the second prong of the Strickland test requires the defendant to prove that counsel's deficiencies were prejudicial to the defense. Id. at 692, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693, 104 S.Ct. 2052. As with deficiency, Strickland places the burden of proving prejudice on the defendant, not the government. Wong v. Belmontes, --- U.S. ----, 130 S.Ct. 383, 390-91, 175 L.Ed.2d 328 (2009).

The Supreme Court has provided two reasons why the federal court must apply a "doubly deferential" judicial review to a state court's application of the Strickland standard under AEDPA. Gentry, 540 U.S. at 5-6, 124 S.Ct. 1. First, as noted above, Strickland instructs courts to review a defense counsel's effectiveness with great deference, Strickland, 466 U.S. at 689, 104 S.Ct. 2052, and AEDPA requires federal courts to defer to the state court's decision unless its application of Supreme Court precedent was objectively unreasonable, Renico, 130 S.Ct. at 1862. When a federal court reviews a state court's Strickland determination under AEDPA, both

AEDPA and Strickland's deferential standards apply; hence, the Supreme Court's description of the standard as "doubly deferential." Gentry, 540 U.S. at 6, 124 S.Ct. 1.

Second, our review is "doubly deferential" because Strickland provides courts with a general standard, rather than a specific legal rule. Knowles, 129 S.Ct. at 1420; see also Bobby v. Van Hook, --- U.S. ----, 130 S.Ct. 13, 16, 175 L.Ed.2d 255 (2009) (per curiam) (holding that Strickland necessarily established a general standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant" (internal quotation marks omitted)). Because judicial application of a general standard "can demand a substantial element of judgment," the more general the rule provided by the Supreme Court, the more latitude the state courts have in reaching reasonable outcomes in case-by-case determinations. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). In turn, the state courts' greater leeway in reasonably applying a general rule translates to a narrower range of decisions that are objectively unreasonable under AEDPA. See id. Accordingly, we review a state court's decision applying Strickland's general principles with increased, or double, deference. See Knowles, 129 S.Ct. at 1420.

When applying this heightened deferential standard, we review the "last reasoned decision" by the state court addressing the petitioner's claim. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). Here, the last reasoned decision addressing [petitioner's] ineffective assistance of counsel claim is that of the [California appellate court on direct review].

*Discussion*

    A. No Brady Violation Occurred

        *The Evidence of the Bogus Bills of Sale Were not In the Prosecution's Possession*

        Although only implicitly determined by the Court of Appeal, the facts demonstrate that the prosecutor was not in possession or control of the bogus bills of sale until

\\\\\

the construction site witness disclosed them to the prosecution shortly before trial.[2]

In criminal cases, the prosecution has a duty to disclose all material evidence that is favorable to the accused. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). This duty extends not only to exculpatory evidence but also to "evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest." United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682, 105 S.Ct. 3375. However, the duty to disclose, here potentially impeaching information, only goes so far as to that information which was actually, or constructively, in possession of the prosecutor.

There is no doubt that a prosecutor has the affirmative duty to ascertain whether agents of the government involved in investigating a particular case, or those acting on behalf of the government, possess potentially exculpatory or impeaching evidence. Kyles v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555 (1995). However, not every witness called by the prosecution is an "agent of the government" or "acting on its behalf." The limits of Kyle are borne out in the case of United States v. Graham, 484 F.3d 413, 417-18 (6th Cir. 2007), where the court found that potential Brady impeaching information in the possession of a cooperating, but independent, witness was not in the possession of the government. In Graham, as is the case here, the witness had discovered on his own, shortly before trial, the existence of the Brady material in question when he was cleaning out some storage lockers. Similarly close to the issue here is United States v. Ernest, 129 F.3d 906 (7th Cir. 1997), in which a supposedly impeaching traffic ticket had later been found in the impounded car of a government cooperating witness; the government had no duty to investigate the impounded car for evidence potentially helpful to the defense.

---

[2] By commencing its discussion of the straight Brady issue at the time of its disclosure, the Court of Appeal implicitly assumed that there had been no Brady violation possible until such time.

1  Here, the construction site witness was not an agent of the government, but rather
2  an independent witness; petitioner has introduced nothing to show otherwise.  The prosecutor
3  had no duty to investigate this witness for the purpose of determining whether this witness had
4  any information potentially helpful to the defense.

5  B. No Brady Violation Occurred Because The Information Disclosed Was
6  Disclosed in a Sufficiently Timely Manner

7  Even assuming that the prosecution somehow should have ferreted out the bogus
8  bills of sale ahead of when it did, the Court of Appeal expressly found that the disclosure when
9  made (verbally, approximately a week before trial, and the evidence itself, just before trial) was
10 sufficient in that the defense was able to make use of it.

> " *Brady* does not necessarily require that the prosecution turn over exculpatory material before trial. To escape the *Brady* sanction, disclosure 'must be made at a time when disclosure would be of value to the accused.' *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir.1985); *see also United States v. Shelton*, 588 F.2d 1242, 1247 (9th Cir.1978) (delay in disclosure only requires reversal if it so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving a fair trial), cert. denied, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979)." ( *United States v. Gordon* (9th Cir.1988) 844 F.2d 1397, 1403, orig. emphasis.)
>
> The prosecutor did not commit a *Brady* violation by turning over the notes when he did. Here, they were disclosed as soon as the prosecutor received them and were produced shortly thereafter before commencement of trial when they were of maximum utility to defendant. They, in fact, were used to impeach the foreman and thus raise a reasonable doubt as to the unlawful taking or driving charge. Defendant's federal constitutional rights were not violated.

People v. Kirk, 2006 WL 1283922 at *4.

21 The Court of Appeal correctly identified the law, and applied it in a reasonable
22 fashion.  To this day, petitioner does not suggest what, if anything, the defense would, or should,
23 have done with the evidence other than what defense counsel did – argue the inference which
24 favored his side.  Petitioner identifies nothing that could have been done to somehow buttress the
25 use of the evidence, and just as importantly, what would have actually been shown if the
26 evidence had been forensically tested, or otherwise investigated at an earlier time.  Petitioner has

8

in no way shown that the Court of Appeal's determination was AEDPA unreasonable.

### C. Petitioner Has Not Shown Ineffective Assistance of Counsel

Petitioner asserts that his counsel was ineffective because he only moved for dismissal on account of the Brady violation, instead of combining that request with an alternative request for lesser sanctions, i.e., exclusion of the offending bogus bills of sale. Of course, if there existed no Brady violation, counsel cannot have been ineffective with respect to any sanction requested.

The Court of Appeal, however, went further and implicitly assumed the existence of a Brady violation.[3] It found no possible prejudice.

> Here there was a sound tactical reason for seeking the all or nothing sanction of dismissal. The circumstantial evidence against defendant was strong without the notes of sale. On two different occasions prior to the vehicle theft, both the foreman and a police officer had spotted defendant at the worksite from which the truck was stolen. Defendant's only visible means of transportation was a bike. On one of those occasions, the foreman ran after the fleeing defendant and got a glimpse of an employee's keychain that had been reported missing. When defendant was apprehended, he was standing adjacent to the stolen truck that was blocking an alleyway in the dead of night. Although defendant disclaimed ownership, he volunteered to move the truck. The trier of fact could infer from this unusual offer that defendant desired to minimize the risk that further inspection of the truck would entail. When that inspection showed the truck had been hot wired, and that it would not turn over, it explained why it was stopped in the middle of the alley. It also explained defendant's presence next to the truck and his solicitous behavior toward the officer. These circumstances, coupled with defendant's actions prior to the theft, inextricably tied him to the theft, and possession of the stolen truck. There was no satisfactory explanation for this situation.
>
> With the allegedly forged notes, however, defendant was handed a much more plausible explanation, or at least one which could introduce reasonable doubt into the case, at least with respect to the unlawful taking or driving charge. From the defense perspective, the tardy production of the notes of sale provided an explosive tactical weapon it could launch on the credibility of the foreman, who was one of the key prosecution witnesses. In addition, introduction of the notes of sale presented little risk to the defense. In such circumstances, it is apparent why an effective attorney would seek only dismissal of the action as a result of the tardy production of the notes of sale. Defendant stood to gain whether the motion

---

[3] The organization of the appellate opinion was somewhat unusual in that the ineffective assistance of counsel issue with respect to the sanction requested was determined first, and thereafter, the non-existence of the Brady violation was thereafter found.

was granted or denied. If it was granted, defendant would be set free. If denied, defendant could point the finger of blame at the foreman. If the notes had been excluded, it would have removed the evidentiary basis of defendant's only viable defense.

People v. Kirk, supra, at *3.

The logic of the appellate court is inescapable, and the undersigned need not further elaborate.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 01/05/2011

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
kirk2521.157